Good afternoon to your honors and once again it is my honor to appear in front of this body. I represent John Neumann, the individual who bought and paid for his automobile insurance through Farmers Automobile Insurance Association, one of the divisions of Pekin Insurance and I mention those names because one of the parcels of the record, one of the very important letters comes from a Pekin Insurance letterhead and I just do not want that to be overlooked. Mr. Neumann finds himself in the very strange and untenable position where he is a defendant in a single consolidated lawsuit with two complaints and he has the response from his insurance company that they will pay and defend for a portion of the defense of that case but not the whole case. It comes before your honors because in the declaratory judgment action Judge Guilfone in Tazewell County has in my mind narrowly and maybe wittingly ruled that there is no coverage in a portion of the consolidated suit and we think that that with all due respect ignores virtually all of the case law on this subject. I state that that is both contrary to the law and when you look at it an absolutely impractical decision and solution in this case. I will talk about the impracticality of that a little later on but think of it. Who decides how much of the defense they pay for? There is no law on that and frankly that is contrary to Illinois law. Let me just give a quick factual background. This consolidated case, both lawsuits that are consolidated by a court order also entered by Judge Guilfone arises out of one single incident, one vehicle versus pedestrian incident that occurred at one time, the same court of operative facts and as a matter of fact both consolidated complaints arise out of the very same injury to this Mr. Bittner and the cases are consolidated at this point in time without limitation. There is no limit that it is consolidated for discovery only or consolidated for this purpose or any other purpose. They are consolidated for all purposes and the court order is part of the record on that. A couple of concepts of the law which are well known to your honors. The duty to defend and that is the only thing we are here on. We are not here to determine whether this is covered or not, whether there is indemnity or not. We are only here on the extent of the duty to defend, whether a duty to defend exists. The case law is clear. The duty to defend is much broader than the duty to indemnify. The case law is also very clear on the second point which is probably the most important and crux issue of this case and that is if a duty to defend is owed as to one of the theories or one of the allegations, the duty to defend is owed as to all of the theories and all of the allegations. USFG versus Wilkin insulation from the Illinois Supreme Court says that clearly but there are a myriad of other cases that also say that same point and I suspect counsel will not challenge that point. Further, and it is at C275 of the record, we have this letter from Pekin Farmers Insurance to Mr. Newman saying that they will and they agree and admit that they have a duty to defend him on the allegations of the CCMSI complaint in 13L89 which is a portion of the allegations of the consolidated case and then they state in their second sentence after that, it is on the third page of that letter, but we will not defend him for the allegations of the other complaint in the consolidated lawsuit, the Bittner complaint which bears 12L101, but both cases are consolidated under 12L101 and all of the allegations in both of those complaints are part of this suit which will bring us to the suit will be defended, discovery will take place and as a matter of fact, your honors, it is taking place right now in the defense of this personal injury suit with both the intentional allegations and the depositions of some witnesses are taking place and the depositions of the parties have not taken place, but the case is proceeding forward and the practical question then becomes how can that actually take place? When the Illinois law says you have a duty to defend one of the allegations, you have a duty to defend all of the allegations and the underlying injury case consolidated is proceeding forward, there will be one deposition of Mr. Newman, my client, there will be one deposition of Mr. Bittner, the injured party, how can it be in the face of Illinois law and in the face of these allegations that Pekin Farmer's Insurance would only pay for a portion of say Mr. Newman's deposition, a portion of the plaintiff's deposition? Do they expect that counsel will walk out halfway through the deposition and only paying for part of that? Well, my position is, and it's quite clear, Illinois law deals with that. This is what USF&G versus Wilkin Installation in the cases say. If you have a duty to defend, it's broader than the duty to indemnify and you have to defend the whole way. And I am incredulous that the order was entered at the trial court in the declaratory judgment that would allow Pekin to only pay for a portion of the defense. Now, we don't have to go to the next step. This court does not have to go to the next step because I think under this USF&G versus Wilkin Installation, under the theory that if you have to defend one of the allegations, you have to defend them all, I think that answers the question. I think this court need go no further. But we've addressed these arguments in our brief and I'll mention them. Counsel might say, well, there's a general rule, you look only to the four corners of the complaint. I will say this, that is explained quite clearly by the Illinois Supreme Court in Pekin versus Wilson, Pekin Insurance versus Wilson, the same insurance company that's here. And they say, you know, well, that's the general rule. In order to determine the duty to defend, the insurance company cannot close its eyes to other information that it has, to other factual pleading information that it has. And in this case, there are a number of other things that Pekin Insurance knows about that would tell them, they can't put blinders on to this, that could tell them they may have coverage. The very first thing, the CCMSI complaint in the 13-089 case that says the exact same allegations of Mr. Newman moving a barricade and then driving his vehicle slowly through the barricade and making contact with someone was negligence, not intentional, was negligence. They have the affidavit of John Newman that says he did not intend to hit anybody when he was driving through the barricades. That's part of the record. They have Mr. Newman's recorded statement, which is privileged, and it is not before your honors, because it is privileged, so therefore it's not given out to the public, but they admit on page 41 of their brief, they know about it. And they have knowledge outside the four corners of the Bittner complaint. Was this statement given to the adjuster? Yes, your honor. Exactly, your honor. The type of statement that an insurance... And whose privilege is it? It is Mr. Newman's privilege. And he has not waived that? He has not waived that. But Pekin Insurance holds it. They possess it. And of course, they have, you have his affidavit in this record saying what he said, that he didn't do it intentionally. And then, of course, we have the admission in Pekin Insurance's letter, the Reservation of Rights letter at C-275 of the record, where they say we acknowledge that there are, there's a complaint, a public record saying that these are negligent allegations, things which they can't ignore. And the cases, I have at least six listed here, but there are a myriad of cases that say courts in determining coverage, remember? No, no, strike that. I'm sorry. In determining the duty to defend, which is all we're talking about here. Courts in determining the duty to defend may look beyond the four corners of the complaint. The Holabird case, the Grinnell v. Hobbs, Pekin Insurance v. Rowe, the Environdyne case, and in point of fact, this Precision Dose, D-O-S-E. I don't know if it's dose or dose, but I'll, you got them both. Okay? The case that they rely on at site says the exact same thing. Courts may look outside of the four corners of the complaint. I, as I was thinking about this before the arguments, I was thinking, you know, might this court ask me, well, Mr. Fleming, is there, is there another case out there where we have faced this before? Two different complaints consolidated together where there's two separate complaints in the same suit. And the court has faced whether there's a duty to defend. I would say, to your honors, there is. There is. The Holabird case, it is American Economy Insurance v. Holabird. In that case, the original complaint, the court looks to both the original complaint and the third party complaint. The original complaint, the court says, well, maybe that's not enough to kick in coverage. But we may look to the third party complaint that's filed in that case, and that third party complaint gives us additional facts, more information, and then that triggers, remember, all you have to trigger is the potential for coverage. Not that it's covered or not, but the potential for coverage, and then the duty to defend kicks in. So I would say when this court looks to the Holabird, American Economy v. Holabird, this court can see that there is situations where the courts have looked to other pleadings outside of just the complaint in the suit to determine if there's a duty to defend. That being said, your honors, I think it's fairly straightforward when you read the case law. We respectfully request that this court reverse the summary judgment and the declaratory judgment action and find that there is a duty to defend these allegations because there is an admitted duty to defend one of the theories, at the very least, as admitted by Pekin Insurance. Thank you, your honors. And Mr. Brandt? May it please the court, counsel, my name is Philip Brandt. I'm on behalf of Farmers Automobile Insurance Association, and joining me at counsel table is Robert Mark Chalmers. The defense started off the conversation with the idea that these cases were consolidated. I would like to start off with the idea that what we have here are two different complaints, and that's exactly what we have. Officer Bittner brought his own complaint alleging intentional conduct. We did a duty to defend analysis on that. And then CCMSI brought its own complaint alleging they were seeking a different sort of claim. They were seeking a subrogation claim, claiming that trying to recover the funds that the city of Pekin paid out to Officer Bittner in this complaint that occurred in the accident. The two cases were consolidated. The two cases were consolidated, but yet courts have recognized that there's different forms of consolidation. Just because two cases are consolidated does not mean that they become merged. And that's what the defendants are arguing, is that these two cases have become merged. But there's certain factors. How will they be tried? I'm sorry? How will they be tried? They will be tried at one case. However, the case in Dallas, the defendant that actually cites, states that there's a couple different kinds of consolidation. They're saying that this case is merged, but actually there is another form of consolidation that the Dow Court recognized where several cases involving an inquiry are consolidated to the same event in its general aspects. Those cases may be tried together, but maintain their separate docket entries, the separate verdicts and judgments, and the consolidation is limited to one joint trial. But in these two cases, the underlying salient facts are the same, even though there's a different remedy sought in the two different cases, one's subrogation and the other one's direct action, right? Right, exactly. But the underlying facts are it's the same occurrence. The same occurrence, that's correct. Same actions, same occurrence, same everything. That's correct. But even in the Dow case, what they recognized in that case was where, which the defendants are citing, shows that in that case there was the same occurrence. There were a number of plaintiffs that brought the same claims, and the court said, well, we can look at that all together. And how does it work in the defending the case when you've got, so if you don't, if the insurance doesn't defend the one case and you defend the other case, how's that partial amount? Well, it would be, that would be more of a factor of how they would determine how much time was spent per case. But, again, that's not an issue on whether or not there's a duty to defend and whether or not there's consideration. I understand that, but I'm trying to figure out how this would work. It's difficult, but, again, even if we were to say that we consolidated them, we would have, we would run into another problem, which would be that, what if we have a determination that the defendant did not act intentionally in these underlying cases to say that they were merged together? Well, then Bittner, his complaint would be completely over. CCMSI can continue on, but we would have a merged case, so we would have a confusing result there. I mean, that's a lot more difficult than just a billing question. But isn't that common in litigate, I mean, where you have, you know, you're seeking to, you know, under alternative theories and, you know, as to one, you know, it's a finding of not guilty or a dismissal, and then it continues on under another theory? I'm sorry, I'm not sure I understand your question. I mean, you're saying that, you know, if it was found to be not intentional, I mean, is that uncommon? You know, you'll find, as to one theory, you know, they come back and it's a finding of not guilty, that they didn't have, you know, enough to show that, but then it goes forward on the remaining theory, or that you can find that it was negligent? Right, but then again, we're back to the duty to defend determination, which is the issue here, and it's whether or not we have a duty to defend under the allegations in the Bittner complaint, which alleges nothing but intentional conduct, and the insurance policy clearly states in its insuring agreement that it only covers auto accidents, and auto accidents, courts have stated that it's a sudden and unexpected event, and also it has an exclusion in the policy for intentional conduct where it doesn't cover an insured who intentionally causes bodily injury. Is it too late to amend Bittners? If he wants to go ahead and amend it? You know, I'm not sure of the status of the case right now. He could always amend, but however, he appears to choose not to. Typically, we have cases where if the underlying tort plaintiff alleges intentional conduct, we file a declaratory judgment action, and then we receive an amended complaint that says, well, there's other allegations that we're going to bring forward, such as negligence or something like that, and then we'll account to. But here, he's chosen, he's gone from intentional with a couple additions of willful and wanton allegations, which we still think are not covered under the policy under the intentional act exclusion, but he's gone forward and just actually filed our declaratory judgment action and said, I'm going to allege nothing but intentional conduct. He was with us. You know, his counsel was with us at the summary judgment motion, and still we have not received an amended complaint from Officer Bittner. The reason I'm asking, sometimes willful and wanton, there are two degrees, intentional willful and wanton, and then there's another one that the Supreme Court has crafted, which is a form of aggravated negligence. Exactly. And he could have, I mean, under that first complaint that he had filed, I mean, arguably, he could have, you know, there could have been allegations that the court could have found triggered our duty to defend, but he eliminated those. And it wasn't like he had a verified complaint. He abandoned those claims and filed an amended complaint and started all over and said nothing but intentional conduct. What would happen? Would your arguments still be the same if you had intervened, if the city had intervened? If the city had intervened? And filed the same claim? I don't think it would have been, because you would still have two separate complaints that we would be dealing with on doing a duty to defend determination. But it would have been in the same lawsuit. Right. As opposed to two separate suits. Right. But I believe that these are, since these are different claims, I mean, it's not the same complaint that's alleged by Bittner. It's a completely separate plaintiff alleging separate claims, so that would be still a different duty to defend determination. And, again, going on to the idea that, well, we can look at anything outside of these complaints. They cite Pekin versus Wilson for this idea that, you know, the Supreme Court has allowed us to go beyond this and cites a number of cases, but I'd like to address that because the holding in Wilson is not broad as they want it to be. Pekin versus Precision Dose observed that and said the holding in Wilson is limited, and it states in Wilson that, and I quote, a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine the insurer's duty to defend. And if we look at those cases that they're citing where the court looked to other extrinsic evidence to determine the duty to defend, we see that there was something missing or something that needed to be clarified for the court to make that determination. In Holabird, which the defendants cited, the court looked to a third-party complaint because the question of which contractor out of all the contractors that were defendants there performed the installation was that issue in the underlying complaint, but it wasn't alleged in the underlying tort plaintiff's complaint. So we had to look outside to determine who actually did the installation which caused the injury. And in Byrondine, the court looked to a contract because the question of whether the insured was performing engineering services, which were not covered under the policy, wasn't something that was going to be alleged in the plaintiff's, the underlying tort plaintiff's case. He wouldn't know exactly what the contract between the parties were or the difference between the roles that each of them played. Another reason I asked the earlier question and I'm trying to get my head around is that in this situation where the underlying facts and circumstances and actions are just the same, the two complaints from those actions, that conduct, draw two different alleged conclusions. One so far says intentional or willful and wanton. The other one says subrogation based on more of a negligence theory. Yet the conduct, the facts and circumstances are the same in both. Isn't that a factor in the Wilson picture, that you should look at because the cases are consolidated. They're being tried at the same time. You've got these two actions based on the same kind of conduct. And it's the conclusions you're drawing from that conduct that's the difference in the two complaints. But would that suggest that that would trigger the duty to defend? Because if you're going to have to defend the one, you've got the same facts and circumstances. Well, I mean, we might have the, just to clarify that, the conduct alleged is what is critical to the issue of the duty to defend determination here. And they're alleging two different types of conduct. One's alleging intentional, undisputed. And the other one's alleging negligence. But Wilson didn't get into the idea of a consolidation. It wasn't a consolidation case. I mean, Wilson, the examples you're giving of cases where Wilson would not apply are things where the underlying circumstances and facts are very different. You know, you've got one hand, you've got some engineering things. On the other hand, you've got the, right? Well, those were cases where they applied Wilson. They were, in those cases where they looked outside the evidence, you know, what was alleged in the complaints, is that's where they applied Wilson. And they said, there's something missing. There's something we need here. And in this case, when we look at the Bittner's complaint, there's nothing we need to look for. The allegations are clear. They're undisputed. They allege intentional conduct. And then comparing that with the insurance policy, the provisions in the insurance policy in making that duty to defend determination, we see that intentional conduct is just plainly not covered. So there's nothing to clarify. There's no dispute here as to whether or not there's intentional conduct or even negligence, or if there's something that brings it within the policy that's alleged in the Bittner's complaint. Some dispute it, intentional conduct. We go back to the insurance policy, and there we see that there's no dispute. The policy is clear. It's unambiguous. It clearly states that we don't cover, this policy does not cover intentional conduct as alleged in that complaint. Let me ask this question in a different way then. Yes. The fact that it's consolidated, is that a factor outside the Bittner complaint that the court can look at to say whether or not Wilson's triggered? Is that one of the factors that a court can consider in the say there's a duty to defend? Because two cases are consolidated. One that is enough to have the duty to defend. One that's alleging intentional conduct, yet they're consolidated. Is that a factor to say there's a duty to defend in both? I would say no, because what we deal with, since there's different forms of consolidation, and we're arguing that this case is not merged. I'm not saying merged. I'm saying it's going to be the same trial. Right. I've never used the word merged. Right. I'm saying it's been consolidated for trial. Exactly. But still going, my answer would still be no, because Wilson says that under certain circumstances can we look outside to extrinsic evidence. And those certain circumstances have been recognized in all these cases that have been cited, Holabird and Virodine and even Wilson itself, that where we had to go find facts that were not alleged in the allegations and the complaint that were critical to the determination of whether or not there was a duty to defend, that's when we needed to go and look at something else. But here, even though they're consolidated, we don't need to do that. But that happens in the subrogation case, doesn't it? In the subrogation case here. Whether or not you're going to make a determination, right? In the subrogation case. In the subrogation case, again, we just went through the allegations and the complaint. We don't need to look any further. I mean, it's clear. In alleged negligent conduct, the policy covers auto accidents. That's covered. That is covered, and that's exactly what farmers did here, was to make sure that that complaint was covered and that we were going to provide a defense on that one. Are there any cases dealing with this kind of consolidation for trial situations and insurance coverage? In insurance coverage, not that I could find. So this would be fairly novel, but I think just going off the case law, especially Dow, the factors in Dow, which show, I think it's the second factor, which shows that if they maintain, if there are different claims, if there's going to result in a different judgment, if there's going to be separate docket entries, there's a lot of factors there that we can look to to say that, hey, they're not merged, so they're still just separate complaints. And so the duty to defend in this situation would have to go off of each of those complaints because, again, the Wilson considerations would not apply here. We would stick to the Acorn's complaint, which is still the law in Illinois and has been upheld in this court in the Pekin v. United Contractors case. If there's no other questions, I would ask that this court affirm the trial court and that the decision to grant Pekin's motion for summary judgment that there was no duty to defend was correct. Thank you. Thank you, Mr. Grant. And Mr. Blank? I'll be brief in my response. I do apologize to this court. I probably overlooked it. This is Josh Smith sitting with me at the table. His name's on the briefs. He assisted Mr. Chemers, got introduced. We've met Mr. Chemers before. I thought I knew that oversight, so I apologize for that. Just briefly, I almost find it difficult to see what he's arguing up here because they've admitted the obligation to defend a portion of the allegations of this single consolidated case. I'm going to be defending Mr. Newman, my client, in one deposition, in one set of discovery, in one taking a deposition of the plaintiff, and they've admitted that they have the duty to defend part of it. And Justice Carter's question, pointed question, was not directly answered with all due respect to counsel. How do you parcel out a duty to defend? If you have a duty to defend one, you have a duty to defend the whole case, and no one has offered the answer to the practical question, how can you have a partial duty to defend? Well, I think you all know the answer is that. If you have a duty to defend part, you have a duty to defend all. And then I guess I would say in response to the question of has this been addressed by the court before, where there's been consolidated complaints and is there a duty to defend, I guess the closest, the word consolidated isn't in it, but the closest case that we have is the Mayor of Kennedy County versus Holabird where there's a complaint, but there's also a third-party complaint. And if they're both proceeding forward in the same suit and they both go to trial at the same time, well, that seems similar to what we have here in one action that is being defended through discovery and through trial out of one court of operative facts. So once again, Your Honors, we respectfully request that this trial court decision in the declaratory matter be reversed and that this court find a duty to defend partial allegations is the duty to defend all. Okay. Thank you very much, Mr. Cohen. Thank you both for your honorable statement. We'll take this matter under advisement and get back to you with a written disposition within a short time. And I'll take a short recess.